# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

Dion G. Wilkins,
      Petitioner,

    vs.

                              Case No. 1:09cv781
                              (Spiegel, S.J.; Hogan, M.J.)

Warden, Chillicothe Correctional
Institution,
      Respondent.

## REPORT AND RECOMMENDATION

Petitioner, an inmate in state custody at the Chillicothe Correctional Institution in Chillicothe, Ohio, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the petition, which petitioner has been allowed to supplement (Docs. 3, 15); respondent's return of writ with exhibits (Doc. 9); and petitioner's "traverse" in reply to the return of writ (Doc. 14). Also pending before the Court for Report and Recommendation are two motions filed by petitioner requesting that the instant action be stayed so that he can exhaust three of his claims for relief in the state courts. (Docs. 4, 13).[1]

## Background

On April 27, 2006, the Clinton County, Ohio, grand jury returned a four-count indictment in Case No. CRI 2006-5706, charging petitioner with three counts of trafficking in, respectively, cocaine, crack cocaine and heroin "in the vicinity of a juvenile" in violation of Ohio Rev. Code 2925.03(A)(2)(1), as well as one count of having weapons while under disability in violation of Ohio Rev. Code § 2923.13(A)(3); a firearm specification was attached to the three trafficking charges. (Doc. 9, Ex. 1).  On May 11, 2006, the Clinton County grand jury returned another

---

[1]In one of his motions for a stay, petitioner also requests "permission to submit partly handwritten petition and single copy for exhibits." (*See* Doc. 4). That request, as well as another non-dispositive motion filed by petitioner to supplement the petition (*see* Doc. 15), have been granted in a separate Order issued this date.

indictment in Case No. CRI 2006-5129, charging petitioner with an additional count of trafficking in marijuana in violation of Ohio Rev. Code § 2925.03(A)(1). (*Id.*, Ex. 5).

Petitioner filed a pretrial motion to suppress in Case No. CRI 2006-5706, which was denied on November 9, 2006 after a hearing held on August 8, 2006. (*See id.,* Exs. 3-4, 8 & Tr. on Motion To Suppress). In the meantime, in September 2006, the two indictments were consolidated for jury trial. (*Id.*, Ex. 7). Petitioner filed a motion to sever the two cases, which was denied after a hearing held on March 6, 2007. (*See id.,* Ex. 7 & Tr. on Motion to Sever).

The matter proceeded to trial before a jury, which found petitioner guilty as charged in the two indictments. (*See id.,* Exs. 15-16). On March 16, 2007, petitioner was sentenced to an aggregate prison term of fifteen (15) years and four (4) months. (*Id.*, Exs. 17-18).[2]

Petitioner's trial counsel filed a timely notice of appeal to the Ohio Court of Appeals, Twelfth Appellate District, on petitioner's behalf. (*Id.*, Ex. 19). With the assistance of new counsel for appeal purposes, petitioner filed a brief raising the following assignments of error:

1. The trial court erred by denying appellant's motion to suppress.

2. The trial court erred by consolidating Case Number 2006 5129 with Case Number 2006 5076 for purposes of trial and by denying appellant's motion to sever.

3. The verdict on the gun specifications and the finding that the offenses stated in Counts One, Two and Three of Case 2006 5076 were committed within the vicinity of a juvenile were not supported by sufficient evidence, and/or were against the manifest weight of the evidence.

---

[2]Specifically, as set forth in the final nunc pro tunc Judgment Entry filed on March 22, 2007, petitioner was sentenced to the following consecutive terms of incarceration in Case No. CRI 2006-5076: a mandatory four (4) year prison term for the cocaine trafficking offense; a mandatory six (6) year prison term for the crack cocaine trafficking offense; a seventeen-month prison term for the heroin trafficking offense; a two (2) year prison term for the weapons offense; and a mandatory one (1) year prison term on the merged firearm specifications. (Doc. 9, Ex. 18). In addition, petitioner was sentenced in Case No. CRI 2006-5129 to a consecutive eleven-month prison term for the marijuana trafficking offense,

4. The trial court erred by ordering the defendant to serve his sentences consecutively on all five counts of which he was found guilty.

(*Id.,* Ex. 20).

On June 9, 2008, the Ohio Court of Appeals overruled petitioner's assignments of error and affirmed the trial court's judgment. (*Id.,* Ex. 23). In its Opinion, the court made the following factual findings, which are presumed correct under 28 U.S.C. § 2254(e)(1),[3] based on the evidence presented at trial regarding the circumstances giving rise to the criminal charges and convictions:

> The Clinton County Sheriff's Office received citizen complaints that Rebecca Workman was selling marijuana from her apartment in Wilmington, Ohio. Sergeant Douglas Eastes initiated a controlled buy using a confidential informant and marijuana was obtained. Thereafter, Sgt. Eastes submitted an affidavit in support of a search warrant for the premises and any and all persons located therein. The search warrant was issued.
>
> Upon execution of the warrant, the sheriff's deputies located cocaine, crack cocaine, heroin, and marijuana in the master bedroom of the apartment, along with other drug paraphernalia. No persons were present in the apartment when the search was initiated. Based on employment documents found in the home, a deputy obtained Workman from her place of employment and brought her to the apartment. Workman indicated to the deputies that the cocaine, crack cocaine, and heroin belonged to appellant, who was her boyfriend.
>
> The deputies asked Workman to get appellant to come to the apartment so he could be searched pursuant to the warrant. From the sheriff's

---

[3]28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct" unless petitioner rebuts the presumption by "clear and convincing evidence." In this case, because petitioner has neither argued nor presented clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted herein, such findings are presumed to be correct.

office, she telephoned appellant and told him that her apartment had been broken into and asked that he come there. When appellant arrived at the apartment, he was searched by the deputies and placed into custody. Crack cocaine and heroin in capsules were found on his person. During the ongoing search, firearms were also discovered in a box on a shelf in the closet in the living room of the apartment. Workman indicated that the firearms did not belong to her, and that she was unaware of their presence in her apartment, though they were discovered in a box packed by Workman of clothing belonging to Workman's prior boyfriend. Ammunition for each of the guns was found in the master bedroom of the apartment. A sales receipt for ammunition and surveillance video from a Wal-Mart store indicate the ammunition was purchased by appellant.

After a trial by jury, appellant was convicted for trafficking in cocaine ..., a second-degree felony, with a special finding that the amount of cocaine was an amount equal to or exceeding ten grams but less than 100 grams; trafficking in crack cocaine ..., with a special finding that the amount of crack cocaine was exceeding ten grams but less than 25 grams; and trafficking in heroin[.]... On each count, the jury made a special finding that the offense was committed within the vicinity of a juvenile, and the defendant had a firearm on or about his person or under his control while committing the offense. Appellant was also convicted of having weapons while under a disability.... In a separate case based on unrelated events, appellant was also charged with trafficking in marijuana ..., a felony of the first degree. ....Appellant was convicted on that charge, as well....

(*Id.,* pp. 1-3).

Petitioner filed a timely *pro se* appeal to the Ohio Supreme Court, raising the same four claims of error that he had presented on direct appeal to the Ohio Court of Appeals. (*See id.,* Exs. 24-25). On October 29, 2008, the state supreme court denied petitioner leave to appeal and summarily dismissed the appeal "as not involving any substantial constitutional question." (*Id.,* Ex. 26).

In the meantime, in September 2008, petitioner also filed a timely *pro se* application pursuant to Ohio R. App. P. 26(B) with the Ohio Court of Appeals,

Twelfth Appellate District, for reopening of the direct appeal. (*Id.*, Ex. 27). In the application, petitioner claimed that his appellate counsel was ineffective because he did not assert the following claims as assignments of error on appeal:

> 1. Wilkin[s'] search and subsequent arrest w[ere] illegal as a search incident to arrest where Wilkins was searched without probable cause and the arrest was based on fruits of an illegal search in violation of the 4th Amendment to the U.S. constitution and under Art. 1 sect. 14 of the Ohio constitution.
>
> 2. The court committed prejudicial error when it allowed the State of Ohio to introduce into evidence Wilkins['] prior convictions for drug offenses during his trial for drug offenses over the objections of defense counsel.

(*Id.*). On January 8, 2009, the Court of Appeals denied the reopening application, finding that "counsel's failure to argue the specific assignments of error appellant presents in his application does not raise a *genuine issue* as to whether appellate counsel was ineffective." (*Id.,* Ex. 29, p. 3) (emphasis in original).

Petitioner timely appealed the appellate court's decision to the Ohio Supreme Court. (*Id.,* Exs. 30-31). On May 8, 2009, the state supreme court summarily dismissed the appeal "as not involving any substantial constitutional question." (*Id.,* Ex. 32).

Petitioner initiated the instant habeas corpus action in October 2009. (*See* Doc. 3). In his *pro se* petition, petitioner asserts the following grounds for relief:

> **Ground One**: The Trial Court erred by denying Petitioner's Motion to Suppress and the Appellate Court wrongly affirmed, thus denying Petitioner's constitutional right to due process per the U.S. Constitution and Section 14 of Article 1 of the Constitution of the State of Ohio.
>
> **Ground Two**: The Trial Court erred by consolidating Cases 5129 [and] 5076 for purposes of Trial by denying Petitioner's Motion to Sever.
>
> **Ground Three**: The verdict on the gun specification and the finding that the offenses stated in Counts One, Two and Three of Case No. 2006 5076 were committed within the vicinity of a juvenile were not

supported by sufficient evidence and/or were against the manifest weight of evidence.

**Ground Four**: The trial court erred by ordering the Petitioner to serve his sentences consecutively on all five counts of which he was found guilty.

**Ground [Five]**: [Ground raised under Ohio R. App. P. 26(B) that] Petitioner's search was unconstitutional as an incident to arrest where that search was conducted without probable cause and the fruits of that search provided justification for the arrest in violation of the 4th Amendment to the U.S. Constitution and under Art. 1, Section 14 of the Ohio Constitution.

**Ground [Six]**: [Ground raised under Ohio R. App. P. 26(B) that the] Trial Court committed prejudicial error when it allowed the State of Ohio to introduce into evidence, the Petitioner's prior record unrelated to his present trial over numerous objections of trial counsel.

**Ground [Seven]**: [New ground raised that] Petitioner was denied the right to a fair and impartial jury chosen from a fair cross section of the community, thus violating his constitutional rights under Amendments 6 & 14, by having an all white jury and jury pool.

**Ground [Eight]**: [New ground raised that] Petitioner's Sixth Amendment right to confront a witness was violated when the trial court admitted a Wal-Mart videotape into evidence without a Wal-Mart employee and thus also not laying the predicate foundation for "Business Records" under Evid. R. 803(6).

**Ground [Nine]**: [New ground raised that] Petitioner's constitutional rights were violated by depriving him of a fair trial due to prosecutorial misconduct.

(*Id.*, "Annexure A").

Petitioner has filed motions requesting that the instant action be stayed so that he can exhaust the three new claims alleged in Grounds Seven through Nine of the petition in the state courts. (Docs. 4, 13). In the return of writ filed in answer to the

6

petition, respondent contends that petitioner has waived these new claims as a result of his failure "to present them at all to any State Court." (Doc. 9, Brief, pp. 21-22). Respondent also argues that petitioner has waived the claims alleged in Grounds Two, Four, Five and Six due to other procedural defaults committed in the state courts; that the Fourth Amendment claim alleged in Ground One is barred from review under *Stone v. Powell,* 428 U.S. 465 (1976); and that only the sufficiency of evidence claim alleged in Ground Three is subject to review on the merits herein. (*Id.,* pp. 11-22).

## OPINION

### A.  Petitioner's Requests For Stay Of The Instant Action (Docs. 4, 13) Should Be Denied; Because There Is No State Court Remedy For Petitioner To Pursue, The Unexhausted Claims Alleged In Grounds Seven Through Nine Should Be Dismissed With Prejudice As Waived

In the petition, petitioner concedes that the claims alleged in Grounds Seven through Nine were never presented to the state courts. (Doc. 3, p. 12 & "Annexure B"). However, petitioner has filed motions requesting that the instant action be stayed, so that he can exhaust these claims in the state courts. (Docs. 4, 13). In the first motion filed on the same date as the petition and in his "traverse" brief, petitioner concedes that at this late juncture, he "knows of no state remedy or avenue open" in which to raise the claims. (*See* Doc. 4; Doc. 14, p. 5). In the petition and in the second "Motion For Stay On Unexhausted Grounds," he avers that the three new grounds "were clear as daylight but Appellate Counsel failed to raise them." (*See* Doc. 3, "Annexure B;" Doc. 13). Although the State has not responded to petitioner's requests for a stay, respondent contends in the return of writ that the unexhausted claims should be dismissed with prejudice because they are waived. (Doc. 9, Brief, pp. 21-22).

The resolution of petitioner's requests for a stay requires an understanding of the principles of exhaustion and waiver in habeas corpus cases, which although overlapping to some degree, are separate and distinct concepts leading to either a stay or dismissal of the case without prejudice when exhaustion principles are applied or the denial of unexhausted claims with prejudice when waiver principles are invoked.

The waiver and exhaustion principles are premised on the same underlying rationale. In recognition of the equal obligation of the state courts to protect the

7

constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must first fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (*per curiam*); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied,* 474 U.S. 831 (1985).

Although premised on the same concerns, the waiver and exhaustion doctrines are distinguishable in that they are applied in distinctly different situations. If the petitioner fails to fairly present his claims through the state courts, but still has an avenue open to him in the state courts by which he may present the claims, his petition may be stayed or dismissed without prejudice so that he can exhaust the available state court remedy. *See* 28 U.S.C. § 2254(c); *see also Rhines v. Weber,* 544 U.S. 269 (2005).

On the other hand, if the petitioner fails to fairly present his claims through the state courts or commits some other procedural default relied on to preclude review of the merits of his claims by the state's highest court, and if no avenue of relief remains open or if it would otherwise be futile for petitioner to continue to pursue his claims in the state courts, the unexhausted claims may be subject to dismissal with prejudice as waived. *See Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989). If, because of a procedural default, petitioner has not had his claims considered by the state's highest court and he can no longer present his claims to the state courts, he has waived the claims for purposes of federal habeas corpus review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional errors, or that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, as petitioner has recognized, there is no longer any remedy available in the state courts for petitioner to pursue. Petitioner has already exhausted the direct appeal remedy, as well as the remedy of an application for reopening of the

direct appeal. To the extent petitioner alleges that his appellate counsel was ineffective in failing to raise the new claims on direct appeal, he is foreclosed from presenting such a claim to the state courts at this juncture because there is no provision for second or successive applications for reopening under Ohio R. App. P. 26(B). *See, e.g., State v. Williams,* 790 N.E.2d 299, 300-01 (Ohio) (*per curiam*), *cert. denied,* 540 U.S. 1053 (2003); *State v. Richardson,* 658 N.E.2d 273 (Ohio 1996) (*per curiam*); *State v. Cheren,* 652 N.E.2d 707, 708 (Ohio 1995) (*per curiam*) (citing *State v. Peeples,* 652 N.E.2d 717 (Ohio 1995), decided the same date, in holding that "a prisoner has no right to file successive applications for reopening," and that "[o]nce ineffective assistance of counsel has been raised and adjudicated, *res judicata* bars its relitigation"); *cf. Reid v. Moore,* No. 3:05cv326, 2008 WL 596781, at *1, *12 (S.D. Ohio Mar. 5, 2008) (Rose, J.; Merz, M.J.) (unpublished). Therefore, a stay or dismissal of this action without prejudice for exhaustion purposes is not warranted, and petitioner's requests for a stay (Docs. 4, 13) should be **DENIED**.

As respondent has argued in the return of writ, petitioner committed a procedural default by failing to provide the state courts with the opportunity to consider the claims alleged in Grounds Seven through Nine of the petition. Because, as discussed above, no avenue remains open in the state courts for petitioner to pursue relief, the unexhausted claims are subject to dismissal with prejudice in the absence of a showing of cause for and prejudice from the procedural default or that a fundamental miscarriage of justice will occur if the claims are not considered herein. *Coleman,* 501 U.S. at 750; *Murray,* 477 U.S. at 485; *Engle,* 456 U.S. at 129; *Sykes,* 433 U.S. at 87.

Petitioner has not shown that failure to consider the defaulted claims will result in a "fundamental miscarriage of justice," or, in other words, that the alleged errors "probably resulted in the conviction of one who is actually innocent." *See Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995). Although petitioner has alleged that the evidence presented at trial was insufficient to support his convictions, establishing a colorable claim of actual innocence requires a showing of factual innocence, not mere legal insufficiency. *Bousley v. United States,* 523 U.S. 614, 623 (1998); *Hampton v. United States,* 191 F.3d 695, 703 (6th Cir. 1999); *see also Dixon v. Hudson,* No. 1:05cv2499, 2008 WL 540905, at *7 (N.D. Ohio Feb. 25, 2008) (unpublished).

In addition, petitioner has not demonstrated cause for his procedural default of the unexhausted claims alleged in Grounds Seven through Nine. Although it is well-settled that appellate counsel's ineffectiveness may constitute cause for a procedural

9

default occurring in an appeal as of right to the Ohio Court of Appeals, cause cannot be established if the ineffective assistance of appellate counsel claim was itself procedurally defaulted. *See Murray,* 477 U.S. at 488-89; *see also Edwards v. Carpenter,* 529 U.S. 446, 451-53 (2000); *Burroughs v. Makowski,* 411 F.3d 665, 667-68 (6th Cir.) (*per curiam*), *cert. denied,* 546 U.S. 1017 (2005). Here, petitioner procedurally defaulted any claim that his appellate counsel's ineffectiveness constitutes cause for his procedural default of the claims alleged in Grounds Seven through Nine of the petition. Because he did not assert in his timely-filed application for reopening that his appellate counsel was ineffective for failing to raise the unexhausted claims on direct appeal and is precluded from filing a second or successive reopening application, he is unable to rely on such an argument to establish cause in this case.

Accordingly, in sum, the Court concludes that because no remedy remains available in the state courts for petitioner to pursue relief on the claims alleged in Grounds Seven through Nine of the petition, his requests for a stay of the instant action for exhaustion purposes (Docs. 4, 13) should be **DENIED**. Moreover, in the absence of a showing of cause for petitioner's procedural default in the state courts or that failure to consider the unexhausted claims will result in a fundamental miscarriage of justice, the claims alleged in Grounds Seven through Nine of the petition are barred from review in this federal habeas proceeding and should be dismissed with prejudice as waived.

## B. The Claim In Ground One Stemming From The Denial Of Petitioner's Motion To Suppress Is Barred From Review In This Proceeding

In Ground One of the petition, petitioner alleges that the trial court erred in denying his motion to suppress evidence that he claims was obtained in violation of his rights under the Fourth Amendment and Ohio's Constitution. (Doc. 3, "Annexure A," p. 1).

This Court is precluded from reviewing this ground for relief to the extent petitioner alleges that the trial court's ruling deprived him of his rights under Ohio's Constitution. A federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States, and not "on the basis of a perceived error of state law." 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal court to

10

reexamine state-court determinations on state-law questions").

In the return of writ, respondent contends that the Supreme Court's decision in *Stone v. Powell,* 428 U.S. 465, 494-95 (1976), also precludes federal habeas review of petitioner's claim to the extent he alleges a Fourth Amendment violation. (Doc. 9, Brief, pp. 11-14). As respondent has argued, federal habeas courts are prohibited from addressing the merits of a Fourth Amendment claim brought by a state prisoner if the prisoner had a full and fair opportunity to litigate the claim in state court and the presentation of the claim was not thwarted by any failure of the State's corrective process. *Stone,* 428 U.S. at 494-95.

To determine whether the petitioner's claim is subject to review, a federal habeas corpus court must make two distinct inquiries: (1) whether the State has provided a procedural mechanism through which, in the abstract, petitioner could raise a Fourth Amendment claim; and (2) whether petitioner's presentation of the claim was in fact frustrated because of a failure of that mechanism. *Riley v. Gray,* 674 F.2d 522, 526 (6th Cir.), *cert. denied,* 459 U.S. 948 (1982); *see also Machacek v. Hofbauer,* 213 F.3d 947, 952 (6th Cir. 2000), *cert. denied,* 531 U.S. 1089 (2001).

Ohio provides an adequate procedural mechanism for the litigation of Fourth Amendment claims in the form of a pretrial motion to suppress pursuant to Ohio R. Crim. P. 12, and a direct appeal as of right from an order denying a motion to suppress pursuant to Ohio R. App. P. 3 and 5. Discretionary review by the Supreme Court of Ohio is not an additional requirement for ensuring full and fair litigation of a Fourth Amendment claim in Ohio. Therefore, under the first inquiry, Ohio's mechanism for the resolution of Fourth Amendment claims, in the abstract, presents the opportunity to raise such claims. *Id.*

Under the second inquiry, petitioner has not shown that there was a failure of the State's procedural mechanism which frustrated the presentation of his Fourth Amendment claim in the Ohio courts. Petitioner presented his Fourth Amendment claim to the trial court by way of a suppression motion. (*See* Doc. 9, Exs. 3-4). He also challenged the trial court's denial of his motion to suppress on direct appeal to the Ohio Court of Appeals and on further appeal to the Ohio Supreme Court. (*See id.,* Exs. 20, 25).

Before ruling on petitioner's suppression motion, the trial court held a hearing on August 8, 2006, in which petitioner was provided the opportunity to call numerous

11

witnesses on his behalf. (*See id.*, Tr. on Motion to Suppress). Moreover, on direct review, petitioner was allowed to present arguments challenging the trial court's denial of the suppression motion. In this case, the record reflects that petitioner was not hampered in any way in presenting his Fourth Amendment claim to the Ohio courts and that the claim was carefully considered before it was rejected at the trial level and on appeal. (*See id.*, Ex. 8; Ex. 23, pp. 3-4). The Ohio Supreme Court denied petitioner leave to appeal and dismissed the appeal, apparently because it was not persuaded by petitioner's memorandum in support of jurisdiction that the claim merited further consideration. (*Id.*, Ex. 26).

Accordingly, in sum, the undersigned concludes that (1) petitioner's claim of a violation of Ohio's Constitution is not cognizable in this federal habeas proceeding; and (2) petitioner's Fourth Amendment claim is barred from review under the Supreme Court's *Stone* decision. Habeas review of the federal claim alleged in Ground One of the petition is prohibited, because petitioner had a full and fair opportunity to litigate the claim in state court and the presentation of the claim was not thwarted by any failure of the State's corrective process. *Cf. Stone*, 428 U.S. at 494-95.

## C. Petitioner Has Waived The Claim In Ground Two Due To Noncompliance With A State Procedural Rule, Which Was Relied On By The Ohio Courts As An Alternative Ground For Overruling The Alleged Claim Of Error

In Ground Two of the petition, petitioner contends that the trial court erred when it denied his motion to sever the two criminal indictments that were consolidated for trial purposes. (Doc. 3, "Annexure A," p. 3). In the return of writ, respondent argues that petitioner has waived this claim because he did not renew the severance motion at the close of the State's case or at the close of all the evidence as required under Ohio law. (Doc. 9, Brief, pp. 19-20). Respondent's argument has merit.

It is well-settled that, on federal habeas corpus review, the court may be barred from considering an issue of federal law from a judgment of a state court if the state judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision. *Harris v. Reed*, 489 U.S. 255, 260-62 (1989). The "adequate and independent state ground" doctrine has been applied to state decisions refusing to address the merits of a federal claim because of violations of state procedural rules, including the failure to make a timely objection at trial. *Id.* at 261; *Wainwright v. Sykes*, 433 U.S. 72, 86-87 (1977); *see also*

*McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985).

Such a procedural default does not bar consideration of a federal claim on habeas corpus review unless the last state court rendering a judgment in the case "clearly and expressly" states that its judgment rests on the state procedural bar. *Harris,* 489 U.S. at 263. If the state court clearly and expressly relies on a procedural bar as an adequate and independent state ground for its decision, federal habeas review is foreclosed even if the state court also alternatively rules on the merits of the federal claim. *See, e.g., Sochor v. Florida,* 504 U.S. 527, 533 (1992) (and cases cited therein); *Harris,* 489 U.S. at 264 n.10; *Coe v. Bell,* 161 F.3d 320, 330 (6th Cir. 1998), *cert. denied,* 528 U.S. 1039 (1999). In cases where the last state court to render a reasoned opinion on the claim explicitly relies on a procedural bar, the court will presume that a later unexplained order did not silently disregard the procedural default and consider the merits of the claim. *Ylst v. Nunnemaker,* 501 U.S. 797, 803-04 (1991).

In addition, the rule precluding federal habeas corpus review of claims rejected by the state courts on state procedural grounds applies only in cases where the state rule relied on by the state courts is deemed "adequate" or, in other words, involves a "firmly established and regularly followed state practice" at the time that it was applied. *Ford v. Georgia,* 498 U.S. 411, 423-24 (1991); *Richey v. Mitchell,* 395 F.3d 660, 679 (6th Cir.) (citing *White v. Schotten,* 201 F.3d 743, 751 (6th Cir.), *cert. denied,* 531 U.S. 940 (2000)), *rev'd on other grounds,* 546 U.S. 74 (2005) (*per curiam*); *Warner v. United States,* 975 F.2d 1207, 1213 (6th Cir. 1992), *cert. denied,* 507 U.S. 932 (1993). To be considered regularly followed, a procedural rule need not be applied in every relevant case, but rather "[i]n the vast majority of cases." *Dugger v. Adams,* 489 U.S. 401, 410 n.6 (1989); *see also Byrd v. Collins,* 209 F.3d 486, 521 (6th Cir. 2000), *cert. denied,* 531 U.S. 1082 (2001).

An adequate and independent finding of procedural default will preclude habeas corpus review of a federal claim, unless the petitioner can show "cause" for the default and "prejudice" as a result of the alleged violation of federal law, or demonstrate that failure to consider the federal claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *Harris,* 489 U.S. at 262; *Murray v. Carrier,* 477 U.S. 478, 485 (1986).

In this case, the Ohio Court of Appeals was the last state court to issue a reasoned opinion addressing petitioner's claim challenging the trial court's denial of his motion to sever the criminal charges. Although the court discussed the merits of

the claim at great length, it also clearly and expressly stated in conclusion that petitioner's claim was "deemed to be waived" because petitioner's "trial counsel did not renew the motion to sever at the close of the state's case or at the close of all the evidence." (Doc. 9, Ex. 23, p. 7). The Ohio Supreme Court's later unexplained decision summarily denying petitioner leave to appeal and dismissing the appeal "as not involving any substantial constitutional question" must be presumed to rely on the same alternative ground of procedural default. *See Taqwiim v. Johnson,* 229 F.3d 1154 (table), No. 99-3425, 2000 WL 1234322, at **3 (6th Cir. Aug. 22, 2000) (unpublished) (citing *Levine v. Torvik,* 986 F.2d 1506, 1517 n.8 (6th Cir.), *cert. denied,* 509 U.S. 907 (1993), and *Ylst,* 501 U.S. at 803-04), *cert. denied,* 531 U.S. 1089 (2001).

The state-law ground relied on by the Ohio Court of Appeals was an adequate and independent basis for the court's decision. At the time of petitioner's trial and appeal, it was a well-established and regularly followed practice in Ohio for appellate courts to rule that a defendant waives any claim of error on appeal stemming from the denial of a motion to sever if he fails to renew his objection to the joinder of the offenses at the close of either the State's case or presentation of all the evidence. *See, e.g., State v. Sapp,* 822 N.E.2d 1239, 1251-52 (Ohio 2004) (and numerous published appellate court decisions cited therein); *see also State v. Miller,* 664 N.E.2d 1309, 1317 (Ohio Ct. App. 1995) (and numerous cases cited therein); *State v. Owens,* 366 N.E.2d 1367, 1376 (Ohio Ct. App. 1975); *cf. Echols v. Houk,* No. C-1-03-66, 2005 WL 1745475, at *8 (S.D. Ohio July 25, 2005) (Weber, S.J.) (unpublished) (holding on federal habeas review that the Ohio Court of Appeals clearly and expressly relied on petitioner's violation of Ohio's well-established and regularly-followed contemporaneous objection rule when it stated that petitioner's failure to renew a request for severance of joined counts "at any time during trial" amounted to waiver of the issue).

Therefore, petitioner has waived any claim of constitutional error stemming from the trial court's challenged ruling absent a showing of cause and prejudice or that a fundamental miscarriage of justice will occur if the underlying merits of the claim are not considered herein. *Cf. Echols, supra*, 2005 WL 1745475, at *8; *see also Coleman,* 501 U.S. at 750; *Harris,* 489 U.S. at 262; *Murray,* 477 U.S. at 485.

Petitioner has not provided any justification as "cause" for his procedural default. He also has not shown that failure to consider the defaulted claim will result in a "fundamental miscarriage of justice," or in other words, that the alleged error

14

"probably resulted in the conviction of one who is actually innocent." *See Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995).

Accordingly, in sum, the Court concludes that petitioner has waived the claim alleged in Ground Two of the petition challenging the trial court's denial of his motion to sever the two criminal indictments for trial purposes. The claim is barred from review and is subject to dismissal with prejudice.

### D. Petitioner Is Not Entitled To Relief Based On The Claims In Ground Three Attacking The Sufficiency And Weight Of Evidence For The Firearm Specifications And Trafficking "In The Vicinity Of A Juvenile" Charges

In Ground Three of the petition, petitioner alleges that the jury's verdicts of guilt on the firearm specifications, as well as it's finding that the trafficking offenses charged in Case No. CRI 2006-5076 "were committed within the vicinity of a juvenile," are "not supported by sufficient evidence and/or [are] against the manifest weight of evidence." (Doc. 3, "Annexure A," p. 5). In the return of writ, respondent concedes that these claims, which were raised by petitioner on appeal to both the Ohio Court of Appeals and the Ohio Supreme Court, are not subject to any procedural bar to review. (*See* Doc. 9, Brief, p. 24 & Exs. 20, 25).

However, as an initial matter, the Court is precluded from granting relief based on petitioner's contention that the verdicts of guilt are against the manifest weight of the evidence. As the Ohio Court of Appeals recognized in addressing petitioner's allegations of error on direct appeal (*see id.,* Ex. 23, p. 7), a manifest-weight-of-the-evidence claim is based on a state-law concept that is "both quantitatively and qualitatively different" from a constitutional due process sufficiency-of-evidence standard. *See Tibbs v. Florida,* 457 U.S. 31, 41-47 (1982); *State v. Thompkins,* 678 N.E.2d 541, 546-48 (Ohio 1997).[4] Because the Court has jurisdiction to review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States, and not "on the basis of a perceived error of state law," 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir.), *cert. denied,* 540 U.S. 930

---

[4]It is noted that *Thompkins* was superseded on other grounds by state constitutional amendment allowing for state supreme court review of manifest-weight-of-the-evidence claims in death penalty cases. *See State v. Smith,* 684 N.E.2d 668, 683-84 & n.4 (Ohio 1997), *cert. denied,* 523 U.S. 1125 (1998).

(2003), petitioner's state-law manifest-weight-of-the-evidence claim is not cognizable in this proceeding.

Only petitioner's sufficiency of evidence claim triggers a due process issue subject to review on the merits herein. The Ohio Court of Appeals was the only state court to issue a reasoned decision addressing the merits of the constitutional claim. The court made factual findings, which are presumed correct under 28 U.S.C. § 2254(e)(1),[5] and ruled in relevant part as follows:

> ....In reviewing the sufficiency of evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction.... In reviewing a record for sufficiency, "the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."... [In distinction, in] determining whether a conviction is against the manifest weight of the evidence, the court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.... "Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency."... Therefore, we will address appellant's claim that his conviction was against the manifest weight of the evidence first, as it is dispositive of appellant's claim regarding sufficiency.

> Appellant argues that the finding of guilty as to the gun specification was supported by insufficient evidence.... R.C. 2941.141, regarding the firearm specification, provides, in part: "(A) Imposition of a one-year mandatory term upon an offender under division (D)(1)(a) of section 2929.14 of the Revised Code is precluded unless the indictment *** specifies that the offender had a firearm on or about the offender's

---

[5]*See supra* p. 3 n.3.

person or under the offender's control while committing the offense."

There is no direct evidence on the record to indicate that appellant had firearms on or about his person while committing offenses. Several courts have considered application of the "under the offender's control" provision of the statute in cases involving only constructive possession of a firearm. These cases have found that the state show the defendant had dominion or control over the weapon for purposes of R.C. 2941.141 by proving constructive possession.... "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within the individual's immediate physical presence."...

Whether a defendant is in constructive possession of a firearm is a fact specific determination. Several cases have determined that constructive possession has occurred under circumstances similar to this case. In *State v. Brown* ..., [668 N.E.2d 514 (Ohio Ct. App. 1995)], the Third Appellate District determined the appellant was in constructive possession of a firearm where the gun was found between the mattress and box spring in his bedroom, but he was lying on a couch in the living room at the time of his arrest. In *State v. Spurlock*, Hancock App. No. 5-03-11, [2003 WL 22657824 (Ohio Ct. App. Nov. 10, 2003) (unpublished)], the police found a handgun on the nightstand across the bedroom from where appellant was arrested. The Third District again found that constructive possession had occurred. The Eighth District Court of Appeals has affirmed a case in which a gun was [found] unloaded in a dresser drawer, along with drugs, in an apartment. The appellant was arrested in a downstairs room of the apartment. *State v. Conway,* Cuyahoga App. No. 86140, [2005 WL 3436346, ¶12 (Ohio Ct. App. Dec. 15, 2005) (unpublished), *appeal dismissed,* 846 N.E.2d 535 (Ohio 2006)].

Similarly, in *State v. Benton*, Cuyahoga App. No[.] 82810, [2004 WL 1352843 (Ohio Ct. App. June 17, 2004) (unpublished)], ¶21-29, the Eighth Appellate District found that the appellant was in constructive possession of a firearm where the firearm was located in the console of a car along with drugs that belonged to the appellant. The *Benton* court explicitly rejected the assertion that the underlying drug offense and

17

corresponding firearm possession occur only at the moment the police execute the search warrant. The *Benton* court discussed *State v. Powell* ..., [571 N.E.2d 125, 127 (Ohio 1991)], in which the Ohio Supreme Court considered whether imposition of a firearm specification is proper where the firearm is not "used actively" in the commission of a felony. The *Benton* court noted that the Ohio Supreme Court had found in *Powell* that the firearm specification statute "does not require that the firearm be used in the commission of the felony, or that the defendant acquire the firearm before beginning the crime; all that is necessary is that the defendant have the firearm on his person or under his control at *some point* during the commission of the crime." *Benton* at ¶29, quoting *Powell*[, 571 N.E.2d at 127]. We agree with the *Benton* court's analysis and find it compelling in this case.

In the case at bar, appellant lived in the residence where the drugs and the firearms were found. The firearms were found in a closet in the living room, and ammunition for each of the firearms was discovered in a dresser drawer in the master bedroom of the apartment with other items, including a wallet, belonging to appellant. The state presented a receipt and store video surveillance indicating that appellant purchased the ammunition. Workman testified that the firearms were not hers and that she did not know how the firearms came to be located in the box in the closet of the apartment. Appellant had knives and drugs on his person when he was searched incident to his arrest. Based on this evidence, we cannot say that the jury lost its way when it determined beyond a reasonable doubt that appellant was in possession of the firearms at some point during the commission of the drug trafficking offenses although the gun was not carried on his person or even immediately accessible to him when the search warrant was executed or during his arrest....

Appellant also argues that the finding of guilty on the specification that the offense occurred in the presence of a juvenile is not supported by sufficient evidence.... We note that in other cases where juveniles have resided in a home in which drug trafficking has occurred, courts have found that a rational trier of fact could find that the specification of commission of the crime in the vicinity of a juvenile was proven beyond a reasonable doubt.... This goes to the sufficiency of the evidence. The

unrebutted testimony in the case at bar was that Workman's two young children lived in the apartment. Significant amounts of several different drugs were found in the apartment when the search warrant was executed. We find that the fact that neither appellant nor the children were in the apartment at the time the search warrant was executed is not dispositive. As discussed above, drug trafficking is a crime that occurs not only at the time of the execution of the search warrant or the arrest of the defendant, but encompasses a larger time frame because it includes not only selling or attempting to sell controlled substances, but also the activities of preparing for shipment, shipping, transporting, delivering, preparing for distribution, or distributing controlled substances.... We find that the jury did not lose its way when it determined beyond a reasonable doubt that Workman's children were present during the commission of the crime. As such, we find that the verdict on the specifications was neither against the manifest weight of the evidence nor lacking sufficient evidence.

(Doc. 9, Ex. 23, pp. 7-11) (most state case citations omitted).

In this federal habeas case, the applicable standard of review governing the adjudication of the constitutional sufficiency of evidence claim addressed on the merits by the Ohio Court of Appeals is set forth in 28 U.S.C. § 2254(d). Pursuant to that standard, petitioner is not entitled to relief unless the state court's adjudication of the constitutional claim resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See also Williams v. Taylor,* 529 U.S. 362, 402-03 (2000) (O'Connor, J., writing for majority on this issue); *Harris v. Stovall,* 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied,* 532 U.S. 947 (2001); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied,* 522 U.S. 1112 (1998).

A state court decision is "contrary to" clearly established federal law as determined by the Supreme Court under § 2254(d)(1) if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams,* 529 U.S. at 405-06 (O'Connor, J.); *Harris,* 212 F.3d at 942. An "unreasonable application" of Supreme Court precedent occurs (1) if the

state court identifies the correct legal standard but unreasonably applies it to the facts of the case, or (2) if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams,* 529 U.S. at 407-08 (O'Connor, J.).

Under § 2254(d)(1)'s "unreasonable application" clause, a federal habeas corpus court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411 (O'Connor, J.); *see also Bell v. Cone,* 535 U.S. 685, 694 (2002); *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000); *Harris,* 212 F.3d at 942.

The reasonableness inquiry is an objective one; it does not involve a subjective inquiry into whether or not reasonable jurists would all agree that the state court's application was unreasonable. *Williams,* 529 U.S. at 409-10 (O'Connor, J.); *see also Washington v. Hofbauer,* 228 F.3d 689, 698 (6th Cir. 2000); *Harris,* 212 F.3d at 942-43. Moreover, the writ may issue only if the application is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee,* 229 F.3d at 510, 512 (citing *Williams,* 529 U.S. at 412).

The well-established Supreme Court decision governing the resolution of petitioner's sufficiency of evidence claim is *Jackson v. Virginia,* 443 U.S. 307 (1979). The Due Process Clause requires the State to prove beyond a reasonable doubt every fact necessary to constitute the charged offense. *In Re Winship,* 397 U.S. 358, 363-64 (1970). When a petitioner raises a sufficiency of evidence claim in a petition for a writ of habeas corpus, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319 (emphasis in original).

This standard does not require the State to rule out every hypothesis except that of guilt beyond a reasonable doubt. *Id.* at 326. Rather, under this standard, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.*; *see also Walker v. Engle,* 703 F.2d 959, 969-70 (6th Cir.), *cert.*

*denied,* 464 U.S. 951, 962 (1983). It is the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence and to draw reasonable inferences from the evidence. *Jackson,* 443 U.S. at 319. Consequently, the reviewing court is not permitted to make its own subjective determination of guilt or innocence or otherwise substitute its opinion for that of the jury which convicted the petitioner. *Id.* at 318-19 & n.13; *see also York v. Tate,* 858 F.2d 322, 329 (6ᵗʰ Cir. 1988) (*per curiam*), *cert. denied,* 490 U.S. 1049 (1989).

"Circumstantial evidence alone is sufficient to support a conviction." *Newman v. Metrish,* 543 F.3d 793, 796 (6ᵗʰ Cir. 2008) (quoting *Johnson v. Coyle,* 200 F.3d 987, 992 (6ᵗʰ Cir. 2000)), *cert. denied,* 130 S.Ct. 1134 (2010). Due process is satisfied as long as such evidence is enough for a rational trier of fact to make a permissible *inference* of guilt, as opposed to a reasonable *speculation* that the petitioner is guilty of the charged crime. *Id.* at 796-97 (and Sixth Circuit cases cited therein); *see also United States v. Slewa,* No. 06-20519, 2008 WL 5244353, at *6 (E.D. Mich. Dec. 16, 2008) (unpublished).

In this case, the Ohio Court of Appeals correctly identified and applied the *Jackson* standard of review when it cited and relied on the Ohio Supreme Court's decision in *State v. Jenks,* 574 N.E.2d 492, syllabus ¶ 2 (Ohio 1991) (employing the *Jackson* standard), in addressing petitioner's sufficiency of evidence claim as distinguished from his claim that the verdicts were against the manifest weight of the evidence. (*See* Doc. 9, Ex. 23, p. 8). Upon review of the trial transcript, this Court concludes that the state court's determination that the evidence presented at trial was sufficient to support petitioner's conviction on the firearm specifications and on the charges of trafficking in the vicinity of a juvenile was reasonable under *Jackson.*

First, as the Ohio Court of Appeals found, evidence was introduced at trial that Rebecca Workman's two young children resided in the apartment where digital scales and "significant amounts of several different drugs" were found, including the crack cocaine, cocaine and heroin forming the bases of the trafficking charges in Case No. CRI 2006-5706. (*See* Doc. 9, Trial Tr. 171-76, 215, 345). Lieutenant Brian Edwards of the Clinton County Sheriff's Office, who was one of the officers involved in the search of the apartment, testified that the way the narcotics were packaged, separately in zip-lock baggies, next to a digital scale indicated to him that they were packaged "for resale." (*Id.,* Tr. 284). As the Ohio Court of Appeals pointed out (*id.,* Ex. 23, p. 11), the trafficking charges brought against petitioner under Ohio Rev. Code § 2925.03(A)(2) encompassed not only the offense of "selling or attempting to sell

controlled substances," but also other activities including preparing the substances for shipment or distribution. (*See id.,* Ex. 1). Petitioner does not dispute that sufficient evidence was presented at trial linking him to the crack cocaine, cocaine and heroin discovered during the search of the apartment. Viewing this evidence in the light most favorable to the prosecution as required under *Jackson,* a rational juror could infer that petitioner engaged in trafficking activities in the apartment when the children, who lived there "and were not merely one-time visitors," were present. *Cf. State v. Flores,* Nos. WD-04-012, WD-04-050, 2005 WL 1532650, at *7 (Ohio Ct. App. June 30, 2005) (unpublished) (evidence of residence sufficient, in contrast to case where the only evidence to establish the juvenile specification was that two juveniles were present when the search warrant was executed); *see also State v. Smallwood,* No. 07CA0063, 2008 WL 1930631, at *7 (Ohio Ct. App. May 5, 2008) (unpublished); *State v. Fannin,* No. 80014, 2002 WL 1878860, at *13-14 (Ohio Ct. App. Aug. 15, 2002) (unpublished), *appeal dismissed,* 781 N.E.2d 1020 (Ohio 2003).

A closer question is presented as to whether sufficient evidence was presented to support petitioner's conviction on the firearm specifications. The specifications attached to three of the counts in Case No. CRI 2006-5706 charged petitioner with having "a firearm on or about his person or under his control while committing the offense[s]" of trafficking in cocaine, crack cocaine and heroin, as required under Ohio Rev. Code § 2941.141(A).[6] (*See* Doc. 9, Ex. 1). Ohio Rev. Code § 2941.141(B) provides that "[a]s used in this section, 'firearm' has the same meaning as in" Ohio Rev. Code § 2923.11. Ohio Rev. Code § 2923.11(B)(1) provides that a firearm "means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant" and "includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable."

Here, it is undisputed that operable firearms were discovered in a box obtained from the living room closet during the search of Workman's apartment. (*See* Doc. 9, Trial Tr. 181-84, 298-99). Moreover, sufficient evidence was presented at trial linking petitioner to the firearms. Unrefuted evidence was introduced that petitioner, who had a key to and kept some of his clothes and belongings at the apartment, was

_____

[6]As the Ohio Court of Appeals noted in its decision on direct appeal (*see* Doc. 9, Ex. 23, pp. 8-9), Ohio Rev. Code § 2941.141(A) provides that "[i]mposition of a term of actual incarceration upon an offender ... for having a firearm on or about his person or under his control while committing a felony is precluded unless the ... count in the indictment ... specifies that the offender had a firearm on or about his person or under his control while committing the offense."

Workman's boyfriend and resided at the apartment at the time of the charged offenses. (*See id.*, Tr. 200-01, 345). Workman testified that she did not know there were guns in the apartment. (*Id.,* Tr. 362). Most importantly, as the Ohio Court of Appeals found (*id.,* Ex. 23, p. 10), ammunition for each firearm was recovered from a dresser drawer in the master bedroom, which also contained petitioner's wallet; in addition, a receipt for the purchase of the ammunition and the store video surveillance covering the time indicated on the receipt showed that petitioner was the one who purchased the ammunition from Wal-Mart. (*Id.,* Tr. 180-81, 186, 196-98, 300-01, 339).

The more troubling issue is whether the firearms were on or about petitioner's person or under his control during the commission of the charged drug trafficking offenses. In Ohio, "on or about his person or under his control" generally requires a showing that the firearm was either carried on the defendant's person or was "conveniently accessible within his/her immediate physicial reach." *See, e.g., Benton, supra,* 2004 WL 1352843, at *3. However, as the Ohio Court of Appeals apparently understood in the instant case, a line of cases has developed in Ohio in drug possession cases, which permits the finding of "constructive possession" where proximity of the firearm not only to the defendant, but also to the seized drugs, are factors. *See, e.g., State v. Jackson,* 863 N.E.2d 223, 228 (Ohio Ct. App. 2006) (and Ohio appellate court cases cited therein). "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within the individual's immediate physical possession." *Id.* (quoting *Benton, supra,* 2004 WL 1352843, at *2 n.2).

In *Benton,* which the Ohio Court of Appeals found particularly "compelling" in deciding the issue against petitioner (*see* Doc. 9, Ex. 23, p. 10), the Eighth Appellate District discussed the *Brown* and *Spurlock* decisions cited by the state appellate court in the instant case, as well as another decision from the Tenth Appellate District; the *Benton* court found that these decisions all "suggest that the distance between the offender and the gun during the execution of the [search] warrant must be relatively close in order to find the offender in possession of a firearm during the commission of the underlying drug possession offense." *Benton, supra,* 2004 WL 1352843, at *4. The Tenth Appellate District case differed from *Brown* and *Spurlock* only because in that case "there was insufficient evidence to support the defendant's conviction on a firearm specification," given that "the firearm was not in the same room with the drugs and the distance between the defendant and the firearm was far greater than ten to 12 feet" when the search warrant was executed. *See id.*

23

The *Benton* court first found the Tenth Appellate District case was factually distinguishable because the drugs and firearm "were both found in the console of the car, within inches of each other," and the defendant "admitted that both the crack and gun belonged to him." *Id.* at *5. The court went on, however, to also "reject the assumption implicit in *Brown, Spurlock* and [the Tenth Appellate District court decision] that the underlying drug ... offense and corresponding firearm possession occurs only at the moment the police execute the search warrant." *Id.* Relying on the Ohio Supreme Court's decision in *Powell,*[7] the court held that "all that is necessary [to establish guilt on a firearm specification] is that the defendant have the firearm on his person or under his control *at some point* during the commission of the crime." *Id.*

In light of *Powell*, the *Benton* court ruled that, although the firearm was not on the defendant's person or even immediately accessible to him when the police executed the search warrant, the defendant's admission that the gun belonged to him, "coupled with the fact that the gun was found within inches of the drugs," compelled the conclusion that the defendant "had control of the gun 'at some point' during the commission of the underlying drug possession offense." *Id.* In so holding, the court further noted:

> The underlying purpose of the gun specification [is] to deter possession or control of firearms during the commission of crimes due to the safety hazards such possession or control poses to the public and arresting officers.... Given that purpose, and in light of his admission that the gun belonged to him, it is apparent that [the defendant] had sufficient control over the firearm during the commission of the underlying drug possession offense to pose a threat, if not to the arresting officers, to the public. *This is specially significant in light of the drug trafficking that was occurring at [the defendant's] home....*

---

[7]In *Powell,* the Ohio Supreme Court was faced with the issue as to whether defendants convicted of aggravated burglary could also be found guilty on the attached specification for possession of a firearm during the commission of a felony even though the firearm acquired by theft during the course of the felony was not "used actively" in the commission of the felony. *See Powell,* 571 N.E.2d at 63. The Court held that the specification statute "does not require that the firearm be *used* in the commission of the felony, or that the defendant acquire the firearm before beginning the crime; all that is necessary is that the defendant have the firearm on his person or under his control at some point during the commission of the felony." *Id.*

*Id.* (emphasis added).

This case is more troubling than *Benton*, as well as *Brown* and *Spurlock*, and is similar to the Tenth Appellate District case to the extent the firearms were found in a box in the living room closet, located separately from the drugs and digital scale discovered in the master bedroom. Nevertheless, upon review of all the evidence presented at trial in the light most favorable to the prosecution, the undersigned finds that enough evidence was introduced for the Ohio Court of Appeals to reasonably conclude that a rational juror could infer that the firearms linked to petitioner were under his control *at some point* during the commission of the trafficking offenses charged against him. As discussed above, evidence was introduced that petitioner was involved in the charged trafficking activities, which took place at the apartment that he resided in with Workman and her children. The trafficking activities occurring out of the apartment included not only the preparation "for resale" of the cocaine, crack cocaine and heroin found during the search of the apartment, but also the sale of controlled substances. (*See* Doc. 9, Trial Tr. 167, 284). Moreover, significantly, Workman testified that petitioner expressed concern to her about a "competitor" in the trafficking world, who carried a gun, and that he may have mentioned "in passing" that he was "going to carry a gun" as well. (*Id.,* Tr. 363-64).

In this case, in contrast to *Benton* and the cases discussed therein, petitioner was not convicted on drug possession charges, but of trafficking drugs based on activities occurring at the apartment where the firearms were also found. As the *Benton* court noted, given the purpose of the firearm specification and in light of the evidence of trafficking occurring at the apartment, it was not an unreasonable for the Ohio Court of Appeals to determine that the evidence discovered in the apartment linking petitioner not only to the narcotics being trafficked but also to the firearms found in the apartment was sufficient to establish that petitioner had sufficient control over the firearms during the commission of the underlying trafficking offenses "to pose a threat, if not to the arresting officers, to the public." *Benton, supra,* 2004 WL 1352843, at *5.

Accordingly, in sum, the undersigned concludes that (1) petitioner's state-law claim that the verdicts of guilt on the firearm specifications and the trafficking "in the vicinity of a juvenile" charges were against the manifest weight of the evidence is not cognizable in this federal habeas proceeding; and (2) the state appellate court's determination that the evidence was sufficient as a matter of due process to support petitioner's convictions is neither contrary to nor involves an unreasonable application

25

of *Jackson*, and is not based on an unreasonable determination of the facts in light of all the evidence presented at trial. Therefore, petitioner is not entitled to habeas corpus relief based on the claims challenging the weight and sufficiency of evidence alleged in Ground Three of the petition.

### E. Petitioner Is Not Entitled To Relief Based On The Claim Alleged In Ground Four Challenging The Imposition Of Consecutive Sentences

In Ground Four of the petition, petitioner alleges that the trial court erred when it imposed consecutive sentences on all counts in the joined cases. (Doc. 3, "Annexure A," p. 8).

As an initial matter, as discussed above, this Court is precluded from reviewing petitioner's claim to the extent petitioner alleges that the trial court erred under Ohio law in imposing consecutive terms of imprisonment. *See* 28 U.S.C. § 2254(a); *see also Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions"); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *cf. Sneed v. Donahue,* 993 F.2d 1239, 1244 (6th Cir. 1993) (holding that a claim challenging the petitioner's aggregate sentence under state law "involves a matter of state law," which "is not cognizable in a federal habeas corpus proceeding").

This Court only has jurisdiction to consider whether the alleged error violated petitioner's constitutional rights. However, the Supreme Court has made it clear that consecutive sentences may be imposed without implicating any concerns under the Sixth Amendment. *Oregon v. Ice,* 129 S.Ct. 711, 717-20 (2009). Moreover, petitioner, who was sentenced within the statutory range for each offense after consideration by the trial court of "the relevant factors" (*see* Doc. 9, Ex. 23, p. 13), is unable to prevail on any claim of cruel and unusual punishment under the Eighth Amendment. *Cf. Bryant v. Yukins,* 39 Fed.Appx. 121, 123 (6th Cir. Apr. 29, 2002) (not published in Federal Reporter) (quoting *Austin v. Jackson,* 213 F.3d 298, 302 (6th Cir. 2000), in turn quoting *United States v. Organek,* 65 F.3d 60, 62 (6th Cir. 1995)), *cert. denied,* 537 U.S. 925 (2002).

Accordingly, petitioner is not entitled to habeas relief based on the claim alleged in Ground Four challenging his aggregate prison sentence.

**F. Petitioner Is Not Entitled To Relief Based On The Ineffective Assistance Of Appellate Counsel Claims Alleged In Grounds Five And Six, Which Were Raised In His Reopening Application And Thus Subject To Review Herein**

In Grounds Five and Six of the petition, petitioner alleges claims that were raised by petitioner as examples of ineffectiveness on the part of his appellate counsel in his timely-filed application to reopen the direct appeal under Ohio R. App. P. 26(B). (Doc. 3, "Annexure A," pp. 10, 13; *see also* Doc. 9, Exs. 27, 29-32). As respondent has argued in the return of writ, petitioner procedurally defaulted the underlying claims of error alleged in Grounds Five and Six, which he failed to assert as grounds for relief in the direct review proceedings. (*See* Doc. 9, Brief, pp. 16, 22). However, the undersigned will address the ineffective assistance of appellate counsel claims, which were properly presented to and considered by the state courts on review of his reopening application.

As the Ohio Court of Appeals recognized in its entry denying the reopening application (*see* Doc. 9, Ex. 29, p. 2), petitioner's ineffective assistance of appellate counsel claims are subject to review under the two-part standard established by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668 (1984).  Under that standard, petitioner must demonstrate both (1) his attorney on direct appeal made such serious errors that he was not functioning as the "counsel" guaranteed by the Sixth Amendment; and (2) counsel's deficient performance prejudiced the defense. *See* Strickland, *466 U.S. at 687.*

Under the first prong of the *Strickland* test, petitioner must show that appellate counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *Id.* at 688. In determining whether or not counsel's performance was deficient, the Court must indulge a strong presumption that the challenged conduct fell within the wide range of reasonable professional assistance. *Id.* at 689.

Appellate counsel is not constitutionally ineffective under this prong merely because he declines to raise a non-frivolous issue on appeal that was requested by the defendant. *Sharp v. Puckett,* 930 F.2d 450, 452 (5th Cir. 1991) (citing *Jones v. Barnes,* 463 U.S. 745, 751 (1983)); *see also Johnico v. Chrones,* 187 Fed.Appx. 701, 703 (9th Cir. June 9, 2006) (not published in Federal Reporter) ("Appellate counsel has no duty to raise every single issue requested by a defendant."), *cert. denied,* 549 U.S. 1037

27

(2006). Rather, the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray,* 477 U.S. 527, 536 (quoting *Barnes,* 463 U.S. at 751-52); *see also Coleman v. Mitchell,* 268 F.3d 417, 430-31 (6th Cir. 2001), *cert. denied,* 535 U.S. 1031 (2002). It is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim on direct appeal; however, "[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Smith v. Robbins,* 528 U.S. 259, 288 (2000) (quoting *Gray v. Greer,* 800 F.2d 644, 646 (7th Cir. 1986)); *see also Wilson v. Hurley,* 108 Fed.Appx. 375, 379 (6th Cir. Aug. 30, 2004) (not published in Federal Reporter), *cert. denied,* 543 U.S. 1160 (2005).

To satisfy the second "prejudice" prong of the *Strickland* test, petitioner must demonstrate that a "reasonable probability" exists that, but for his counsel's errors, the result of the direct appeal proceeding would have been different. *See Strickland,* 466 U.S. at 694. Petitioner has met his burden if he shows that the result of the appeal would "reasonably likely have been different absent the errors." *Id.* at 695.

The Court need not examine the question of whether counsel's performance was deficient before addressing the question of whether petitioner was prejudiced by counsel's performance. The Court may dispose of an ineffective assistance of counsel claim by finding that petitioner has made an insufficient showing on either ground. *Id.* at 697.

Here, petitioner alleges in Ground Five that his appellate counsel was ineffective in failing to argue on direct appeal that the search of petitioner's person on his arrival at the apartment was unconstitutional because it was not conducted "as an incident to arrest." (Doc. 3, "Annexure A," p. 10). Petitioner has not demonstrated that this omission by counsel amounted to constitutionally ineffective assistance under either prong of the *Strickland* test. First, as respondent has pointed out in the return of writ (Doc. 9, Brief, pp. 17-18), such a claim was procedurally defaulted by petitioner at the trial level because it was not raised as an issue in his suppression motion. In any event, the Ohio Court of Appeals in addressing the suppression issues that were raised on appeal found that the officers "had probable cause to arrest [petitioner] by the time he presented at the residence." (*Id.*, Ex. 23, p. 4). Although the court also acknowledged that petitioner had not claimed "that the search was unconstitutional as incident to the arrest" (*id.*), given the court's express finding of probable cause to arrest, petitioner is unable to demonstrate that the result of the

appeal would "reasonably likely have been different absent the [alleged] error[]." *Strickland,* 466 U.S. at 695.

In Ground Six, petitioner claims that his appellate counsel was ineffective in failing to argue on direct appeal that the trial court "committed prejudicial error when it allowed the State ... to introduce into evidence" his prior criminal record over defense counsel's "numerous objections." (Doc. 3, "Annexure A," p. 13). However, the evidence was admissible at trial to establish an element of the count charging petitioner with having weapons while under disability. Petitioner, therefore, is unable to satisfy either prong of the *Strickland* test based on such a claim.

Accordingly, the undersigned concludes that it was reasonable for the Ohio Court of Appeals to deny petitioner's reopening application based on the finding that "counsel's failure to argue the specific assignments of error ... does not raise a *genuine issue* as to whether appellate counsel was ineffective" under *Strickland.* (Doc. 9, Ex. 29, pp. 2-3). Therefore, petitioner is not entitled to habeas relief based on the claims alleged in Grounds Five and Six of the petition.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's requests to stay the instant action so that he can exhaust the claims alleged in Grounds Seven through Nine in the state courts (Docs. 4, 13) be **DENIED**.

2. Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (Doc. 3) be **DENIED** with prejudice.

3. A certificate of appealability should not issue with respect to the claims alleged in the petition, which this Court has concluded are waived and thus procedurally barred from review, because under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural rulings.[8]

---

[8]Because the first prong of the *Slack* test has not been met, the Court need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in any of his procedurally-barred grounds for relief. *See Slack,* 529 U.S. at 484.

In addition, a certificate of appealability should not issue with respect to the Fourth Amendment claim alleged in Ground One of the petition, which is not cognizable under *Stone v. Powell,* 428 U.S. 465, 494-95 (1976), or with respect to any of petitioner's claims that were addressed on the merits herein *except for petitioner's claim alleged in Ground Three that the evidence was insufficient to establish his guilt on the firearm specifications attached to the three trafficking counts in Case No. CRI 2006-5706.* A certificate of appealability should issue for consideration of that one claim of constitutional error because, in contrast to petitioner's other grounds for relief, reasonable jurists could debate whether the sufficiency of evidence claim should have been resolved in a different manner; moreover, the issues presented in that claim are "adequate to deserve encouragement to proceed further." *See Miller-El v. Cockrell,* 537 U.S. 322, 323-324 (2003) (quoting *Slack,* 529 U.S. at 483-84) (in turn quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

4. With respect to any application by petitioner to proceed on appeal *in forma pauperis* at the close of this case, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would be taken in "good faith," and therefore **GRANT** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: 9/2/10

cbc

Timothy S. Hogan
United States Magistrate Judge

J:\BRYANCC\2010 habeas orders\09-781deny-stay.deny-pet.4thA.waiv-newclaims-2dreopenapplic.sufficevid-firearmspec-juvenilespec.waiv-adqindepground.iaac.con.wpd

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

Dion G. Wilkins,
     Petitioner


   vs                        Case No. 1:09cv781
                                     (Spiegel, S.J.; Hogan, M.J.)

Warden, Chillicothe Correctional
Institution,
     Respondent


### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), within fourteen (14) days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X ☑ Agent / ☐ Addressee<br>B. Received by (*Printed Name*) \| C. Date of Delivery |
| 1. Article Addressed to:<br><br>Dion G. Wilkins A546871<br>Chillicothe Corr. Inst.<br>PO Box 5500<br>Chillicothe, OH 45601 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No<br><br>3. Service Type<br>☑ Certified Mail   ☐ Express Mail<br>☐ Registered      ☐ Return Receipt for Merchandise<br>☐ Insured Mail    ☐ C.O.D.<br>4. Restricted Delivery? (*Extra Fee*)   ☐ Yes |
| 2. Article Number<br>(Transfer from service label) | 7002 3150 0000 8389 8749 |
| PS Form 3811, August 2001 | Domestic Return Receipt | 102595-02-M-1540 |

1:09cv781  (Doc.17